United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORIS GILES R.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 4:20-cv-1220 |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND ORDER

Plaintiff Noris Giles R. filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). The Parties filed for cross-motions for summary judgment. Pl.'s MSJ, ECF No. 14; Def.'s Cross-

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant in place of Andrew Saul, the former Commissioner.

MSJ and Resp., ECF No. 15.[3] Having reviewed the motions, the record, and the applicable law, the Court determines that Plaintiff's motion should be granted, and Defendant's motion should be denied.

## I.   BACKGROUND

### A. Factual Background

At the time of his initial application, Plaintiff was 61-years old,[4] with a high school diploma and an associate degree in electrical technology. R. 332.[5] Plaintiff worked his entire career as an electrician, primarily self-employed, beginning in 1994. R. 352. Plaintiff states that he continued to work for approximately thirty years, although his hours declined in the more recent years due to pain from impairments. R. 41–43, 52–55.

Plaintiff presents a long history of medical impairments resulting from work-related injuries.  Plaintiff's medical impairments began in 1996[6] when he fell in a trench on the job, injuring his spinal cord. R. 406. Plaintiff claims that following this injury he suffered from pain in his neck, back, and shoulders and had trouble lifting

---

[3] The Parties consented to have this Court conduct all proceedings and the case was transferred on June 3, 2021, pursuant to 28 U.S.C. § 636(c). Order, ECF No. 12

[4] Plaintiff was born on August 19, 1952. R. 106. Plaintiff therefore was 60 years-old at his alleged onset date, and 61-years old at the time he filed his application on June 25, 2014.

[5] "R." citations refer to the electronically filed Administrative Record, ECF No. 10.

[6] There is some confusion in the record when Plaintiff first suffered this injury. Most places in the record indicate that Plaintiff suffered his injury in 2006. R. 19, 36, 207–10, 403–07. Dr. Harris indicates that Plaintiff suffered this injury in 1991. R. 430–32.  Plaintiff testified the injury occurred in 1995 or 1996. R. 36.

his arms. R. 37–38. An MRI in 2002[7] revealed cervical spondylosis[8] and disc degeneration. R. 428–29 (4/11/02).

In 2005, Plaintiff briefly worked as an electrician for a government contractor in Kabul, Afghanistan. R. 444–53. During this employment, Plaintiff had another work-related injury that exacerbated his spinal condition. *Id.*[9] After returning to Houston, Plaintiff sought treatment with Dr. Thomas, who requested a functional capacity assessment with the Rehabilitation Services of Houston ("RSH"). RSH's assessment demonstrated that Plaintiff could perform work at a light exertional level. R. 458–76.[10] An updated MRI revealed that Plaintiff's degenerative disc disease had

---

[7] In 2002, the MRI revealed that Plaintiff had mild development anterior posterior bony spinal canal narrowing of C2 through C7; disc degeneration C4-5 through C6-7 levels; bony canal narrowing with superimposed bold posterior broad-based disc bilging and spondylosis from C3-4 through C6-6 levels, resulting in mild to moderate canal narrowing. The MRI also revealed multilevel facet and uncovertebral joint degenerative change with moderate left foraminal narrowing at C4-5, C5-6, and C6-7. R. 428–29 (4/11/02).

[8] Cervical Spondylosis is a general term for age-related wear and tear affecting the spinal disks in your neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projections along the edges of bones (bone spurs). https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787, last visited 9/30/21.

[9] Plaintiff filed a claim for workmen's compensation benefits under the Longshore and Harbor Workers' Compensation Act and Defense Base Act for this injury, which was settled. R. 444–53.

[10] In 2006, Plaintiff sought treatment from Angela T. Skrabanek, PT, OTR (Director of Industrial Rehabilitation), who conducted a functional analysis. R. 458–76. PT Skrabanek opined that Plaintiff was limited to light work, and was able to perform fine-motor, manual dexterity tasks on a less than occasional basis (1-25% of total workday); lift 20 pounds occasionally and 10 pounds frequently; bend/stoop and reach to the shoulder level less than occasional basis (1-25% of total workday); occasionally climb; sit for 30 minutes at one time and 4 hours total; and stand for 30 minutes at one time and for 1-2 hours total per workday. *Id.*  He had limited ROM and poor muscular endurance so should avoid reaching tasks that are over the shoulder level.

worsened, and he developed mild disc desiccation.[11] R. 426 (12/30/2005). Plaintiff subsequently underwent a c-spine surgery foraminotomy[12] in 2006 with no improvement. R. 424–25 (02/06/06). Records indicate that Plaintiff has been taking Tramadol[13] for his pain since 2009, which he says helps his pain for about 12 hours a day. R. 403–07 (11/14/09).[14]

Plaintiff's most recent accident occurred on November 15, 2015. R. 19. During a karate workout, Plaintiff's friend kicked him in the knee, resulting in a knee injury. *Id.;* R. 60–62. X-rays revealed a left comminuted fracture[15] of the lateral tibial plateau and moderate chondromalacia[16] of the patella. R. 512–13 (on 4/20/16).

---

[11] Plaintiff's MRI, in 2005, revealed mild disc desiccation at C2-3 and C3-4; moderate degenerative disc disease with bilateral posterolateral osteophyte complex at C4-5, C5-6, and C6-7. R. 426 (12/30/2005). Plaintiff had an additional MRI done in 2006 that showed some mild foraminal stenosis had developed at C4-C5, C5-C6, and C6-C7 areas. R. 406.

[12] A cervical foraminotomy is an operation performed on the back of the neck to relieve pressure on one or more spinal nerves. It involves carefully removing a small portion of bone and joint which overlie the spinal nerve, as well as any soft tissue which may also be causing compression. https://www.precisionhealth.com.au/healthcare-services/advanced-neurosurgery-spinal-surgery/procedures-and-surgery/cervical-foraminotomy, last visited 9/30/21.

[13] Tramadol is used to relieve moderate to moderately severe pain and is in the class of opiate (narcotic) analgesic drugs. https://medlineplus.gov/druginfo/meds/a695011.html, last visited 9/30/21.

[14] The parties dispute this fact. Plaintiff argues that the record contains ample evidence that he has been taking Tramadol since 2012 to alleviate pain. ECF No. 14 at 5. The record contains multiple references to Plaintiff taking Tramadol, beginning in 2009. R. 403–07. However, at the 2016 hearing, Plaintiff testified he was not taking any pain medication. R. 71–72. Plaintiff explains that the ALJ's question was whether Plaintiff was taking medicine, meaning at the time of the hearing, and was not directed to any dates in the past, including the relevant time. ECF No. 16-1 at 2.

[15] A comminuted fracture is a fracture in which the bone is broken into more than two fragments. STEDMAN'S MEDICAL DICTIONARY 352980, Westlaw (database updated Nov. 2014).

[16] Chondromalacia refers to softening of the cartilage. STEDMAN'S MEDICAL DICTIONARY 171890, Westlaw (database updated Nov. 2014).

ALJ Suttles noted that, in 2016, Plaintiff continued to walk with a significant limp due to this injury. R. 135. In addition, Plaintiff has Type II diabetes mellitus and Hepatitis C. R. 106.

## B. Procedural History

On June 25, 2014, Plaintiff filed his application for disability insurance benefits under Title II of the Act. R. 294–95. He based his application on chronic neck and shoulder pain, chronic low back pain, chronic muscle pain, Type II diabetes blurred vision, foot pain, and problems with his prostate gland. R. 106.[17] The Commissioner denied his claims initially, R. 106–14, and on reconsideration, R. 116–25.

A hearing was held before Administrative Law Judge ("ALJ") Suttles. R. 45–105 (5/18/16). An attorney represented Plaintiff at the hearing; Plaintiff and a vocational expert testified at the hearing. *Id*. ALJ Suttles issued a partially favorable decision, finding Plaintiff disabled beginning on November 15, 2015, but denying Plaintiff's request for benefits from his alleged onset date, July 15, 2013, until November 14, 2015. R. 127–41 (6/15/16).[18] Plaintiff appealed, and the Appeals

---

[17] The relevant time period is July 15, 2013—Plaintiff's onset date—through November 15, 2015. In the first decision, ALJ Suttles found Plaintiff disabled beginning on November 15, 2015. R. 127–41 (6/16/2016). Plaintiff appealed this partially favorable decision, arguing his disability began on July 15, 2013. ECF No. 1.

[18] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a) and 416.920(a). ALJ Suttles determined Plaintiff was not disabled from July 15, 2013, through November 15, 2015, at step four; ALJ Suttles, however, found Plaintiff disabled beginning on November 15, 2015. R. 127–41. At step one, ALJ Suttles found that Plaintiff had

Council found that ALJ Suttles erred in failing to consider the opinions of non-treating physicians, in particular the opinion of Dr. Zaw. R. 144–48 (8/1/17).  The Appeals Council remanded the case for "further consideration to the non-treating source opinions" and to explain the weight given to such opinion evidence. *Id*.

In accordance with the Appeals Council Order, ALJ Matthews held a second hearing. R. 28–44 (3/19/19). An attorney represented Plaintiff at the hearing, at which Plaintiff testified. *Id*. A vocational expert was present at the hearing on the phone, ready to testify. However, ALJ Matthews chose to not ask the vocational

---

engaged in substantial gainful activity during the period from his alleged onset date of July 15, 2013, up until November 15, 2015. R. 133 (referencing 20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*). Specifically, ALJ Suttles found that Plaintiff sought out work as a self-employed electrician in 2014. In 2015, he worked as an instructor at Houston Community College, earning $3,770 during the first quarter, and $1,720 during the second quarter, ending July 1, 2015. The ALJ found this was not income at the substantial gainful activity level. R. 133.  In contrast, ALJ Suttles found that, beginning on November 15, 2015, the date of the accident, Plaintiff had not engaged in substantial activity. R. 134. At step two, ALJ Suttles found that Plaintiff has the following severe impairments since November 15, 2015: status post fractured left tibia and diabetes. (20 C.F.R. 404.1520(c)). At step three, ALJ Suttles determined that since November 15, 2015, the date of the accident, Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listen impairments R. 134 (citing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). ALJ Suttles found that *prior* to November 15, 2015, Plaintiff had the Residual Functional Capacity ("RFC") to perform medium work; and he could lift and carry 50 pounds and occasionally 25 pounds; could sit, stand, and walk six of eight hours each for a full eight-hour day; could push, pull, and perform gross and fine motor manipulations without any limitations; and could climb stairs, ladders, ropes, scaffolds, and run. R. 134–36. Since November 15, 2015, however, ALJ Suttles found that Plaintiff had the RFC to perform at a light exertional level. R. 136. Because the vocational expert testified that Plaintiff's work as an electrician was performed at the medium level, ALJ Suttles concluded at step four that Plaintiff was unable to perform his past relevant work as a construction electrician. R. 136. Finally, ALJ Suttles concluded that because Plaintiff was closely approaching retirement age on November 15, 2015, has at least a high school education, and does not have work skills that are transferable to other occupations within his limitation to light work, Plaintiff was disabled according to the Medical Vocational Guidelines, Rule 202.06. R. 136–37.

expert any questions. R. 28–44. ALJ Matthews issued a decision,[19] again denying Plaintiff disability benefits from July 15, 2013, through November 15, 2015, finding Plaintiff was capable of returning to his past relevant work as an electrician at the medium exertional level. R. 12–27 (4/30/19). The Appeals Council denied Plaintiff's request for review, thus upholding both ALJs' decisions to deny disability benefits and supplemental security income for the time prior to November 15, 2015. R. 1–6 (2/14/20); *see Sims v. Apfel*, 30 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the Commissioner's final decision.)

---

[19] ALJ Matthews determined that Plaintiff was not disabled from July 15, 2013, through November 14, 2015, the date prior to the established onset date found in ALJ Suttles's decision, at step four. R. 17–22. At step one, ALJ Matthews found that Plaintiff had engaged in substantial gainful activity during the period from his alleged onset date of July 15, 2013, through November 14, 2015. R. 17 (citing 20 C.F.R. § 404.1571 *et seq.*). However, ALJ Matthews found that, because Plaintiff's earnings reflect substantial gainful activity only in the first quarter of 2015, his ongoing work activity does not rise to the level of substantial gainful activity for 12 consecutive months as required in the Social Security Act since July 15, 2013, the alleged onset date. R. 18. Thus, ALJ Matthews concluded that he could continue with the remaining steps of the sequential evaluation process. R. 18. At step two, ALJ Matthews found that from July 15, 2013, through November 14, 2015, Plaintiff had the following severe impairments: status post fractured left tibia and diabetes mellitus (20 C.F.R. § 404.1520(c)). At step three, ALJ Matthews determined that from July 15, 2013, through November 14, 2015, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. 18 (referencing 20 C.F.R. § 404.1520(d)l 404.1525 and 404.1526). ALJ Matthews found that from July 15, 2013, through November 14, 2015, Plaintiff had the residual functional capacity to perform medium work in that he could lift/carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and walk six hours out of eight; push, pull, and perform gross and fine motor manipulations without limitations; climb stairs, ladders, ropes, scaffolds and run without limitations; and bend, stoop, crouch, crawl, balance, twist and squat. R. 18–21. Because Plaintiff's past relevant work as an electrician required medium work, ALJ Matthews concluded that Plaintiff could perform past relevant work at step four. R. 22. Therefore, ALJ Matthews found that prior to November 14, 2015, Plaintiff was not disabled.

On April 6, 2020, Plaintiff filed this appeal, challenging ALJ Matthews' decision and seeking payment of benefits starting on July 15, 2013, or in the alternative, a new hearing. ECF No. 14. Defendant's cross-motion contends that ALJ Matthews properly assessed Plaintiff's limitations and the medical opinions to find Plaintiff capable of medium work. ECF No. 15. In reply, Plaintiff reasserted that ALJ Matthews erred because she ignored the medical opinions in the record that found Plaintiff limited to light and sedentary work. Pl.'s Reply., ECF No. 16.

## II.    STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestekl*, 139 S. Ct. at 1143.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Roeber v. Berryhill*, No. 17-CV-01931, 2018 WL 3745674, at *3 (S.D. Tex. Aug. 7, 2018) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *1 (S.D. Tex. Nov. 30, 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). A reviewing court may not reweigh the evidence in the record, try issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Id.*

However, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp

for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. A finding of no substantial evidence is appropriate only if no credible choices or no medical evidence exists to support the decision. *See Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d

289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Farr*, 2012 WL 6020061, at *2. The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Id*. The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id*. The burden then shifts back to the claimant to rebut this finding. *Id*. If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id*.

## IV.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff argues that ALJ Matthews erred in the RFC calculation because she ignored the medical opinions in the record and failed to include limitations from Plaintiff's chronic neck, back, and shoulder pain. ECF No. 14 at 4–8. Defendant counters that substantial evidence supports ALJ Matthews's RFC because she properly assessed the medical opinions and Plaintiff's limitations. ECF No. 15 at 6–10.

### A.   ALJ Matthews Discounted All Medical Opinions, Relying Instead On Plaintiff's Activities and Her Lay Interpretation Of The Raw Data To Determine Plaintiff's RFC.

In limiting Plaintiff to medium work from July 15, 2013, through

November 14, 2015, ALJ Matthews observed that Plaintiff was able to jog four miles a day frequently, do resistance training and karate, and was not taking any pain medications. R. 19 (referencing 84, 92, 348). ALJ Matthews therefore found that the record did not support the opinions of Dr. Zaw, and the State Agency Medical Consultants ("SAMCs") when they limited Plaintiff to sedentary and light work, respectively. R. 20–21.

While ALJ Matthews largely relies on her interpretation of Plaintiff's testimony and statements, the record tells a different story. The record reflects that, for more than a decade, Plaintiff struggled with spinal degeneration, causing persistent back, neck, and shoulder pain.[20] Plaintiff's condition worsened since his diagnosis in 1996[21] after his second work-related injury in 2005. R. 444–53. The

---

[20] R. 427–28 (On 4/11/02, MRI in 2002, revealing disc degeneration and anterior posterior bony spinal canal narrowing); R. 430–32 (On 10/21/02, Dr. Harris discussing Plaintiff's current chiropractic treatment for Plaintiff's spinal degeneration which caused Plaintiff significant lower back pain); R. 426 (on 12/30/05, MRI revealing mild disc desiccation and moderate degenerative disc disease); R. 424 (on 2/6/06, Plaintiff undergoing surgery to treat parascapular pain resulting from spinal degeneration); R. 403–07 (On 11/14/09, Dr. Benny treating Plaintiff for right-sided neck pain, discussing his spinal stenosis); R. 490–94 (On 12/5/14, Dr. Hawkins documenting moderate spinal degeneration and spondylosis); R. 511–18 (On 4/20/16, Dr. Nolan reporting Plaintiff's complaint of back pain); R. 519–24 (On 3/23/16, Dr. Nolan reporting Plaintiff's complaint of back pain); R. 525–30 (On 3/4/16, Dr. Nolan reporting Plaintiff's complaint of back pain); R. 531–36 (On 2/5/16, Dr. Nolan reporting Plaintiff's complaint of back pain); R. 537–41 (On 1/17/16, Dr. Nolan reporting Plaintiff's complaint of back pain); R. 550–52 (On 4/14/16, physical therapist Thomas treating Plaintiff for back pain); R. 552–54 (On 3/9/16, physical therapist Nobles treating Plaintiff for back pain); R. 570–74 (On 9/14/15, Dr. Robertson treating Plaintiff for upper back pain since 2009).

[21] Although the record starts in 2002, Plaintiff's medical history documents that this diagnosis occurred in 1996. R. 406. Furthermore, while Plaintiff was not diagnosed until the 1990s, Dr. Harris believed that his condition likely existed since childhood and was asymptomatic until this injury. R. 430–32 (10/2/02).

first functional analysis performed shortly after the 2005 accident revealed that Plaintiff's condition limited him to light work.[22] The record indicates that to alleviate his pain, Plaintiff used pain medication[23] and underwent surgery, although the surgery proved unsuccessful.[24] While the record has limited treatment notes between 2006 and 2014, nothing in the record indicates that Plaintiff's condition improved during this time.[25] As Dr. Harris—Plaintiff's chiropractor—explained in 2002, Plaintiff's condition would likely continue to degenerate due to complexities of his Type II diabetes as well as the constant aggravation his occupation as an electrician would have on his injury daily.[26]

In 2014, Dr. Zaw—a consultative examiner[27]—examined Plaintiff and

---

[22] PT Skrabanek's functional analysis following Plaintiff's accident limited him to light work. R. 458–76 (7/5/06). Plaintiff testified that he worked through the pain. R. at 38.

[23] The record demonstrates that Plaintiff first began using Tramadol in 2009. R. 403–07 (11/14/09). Reports indicate that Plaintiff obtained refills of this prescription regularly. R. 561–63 (5/7/09; 4/27/10; 11/9/10; 3/29/11; 8/19/11; 12/6/12; 4/29/14; 8/22/14; 2/26/15).

[24] R. 424–25 (02/06/06).

[25] Once evidence is presented that supports a finding that a condition exists, it is presumed in the absence of contrary proof that the condition remains unchanged. *Loza*, 219 F.3d at 396. *See, e.g., Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *18 (5th Cir. Aug. 19, 2005) (affirming ALJ's decision when he disregarded medical opinions because the data indicated plaintiff had improved over time).

[26] Dr. Harris opined that Plaintiff's case is unique and complicated by the following factors: the area of his injury, the nature of his work with the basic, unchangeable work requirements aggravating his injury on a regular basis; and the complicating factor of his diabetes with spinal degeneration and 7% impairment. R. 430–32 (10/27/02).

[27] "A consultative examination is required . . . only if 'the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).

provided a functional analysis, limiting Plaintiff to sedentary work.[28] Likewise, both SAMCs conducted functional analyses of Plaintiff in early 2015 during the relevant time-period and prior to Plaintiff's third accident in November 2015. Both SAMCs limited Plaintiff to light work due to the pain caused by his spinal degeneration.[29] Despite these analyses limiting Plaintiff to sedentary or light work, ALJ Matthews found that Plaintiff could perform medium work based largely on his testimony and daily activities. R. 18–21.[30]

---

Because a consultative examination was ordered, the Commissioner implicitly determined that further medical opinion was necessary to make a disability determination.

[28] Dr. Zaw indicated that Plaintiff had mild tenderness over the lower spine area; was not able to squat due to knee pain but could bend forward. R. 487–89. (12/3/14). Dr. Zaw also opined that Plaintiff's sitting was unlimited, standing was limited to 30 minutes a day, walking was limited to one block, and lifting/carrying objects was limited to 10 pounds. *Id.*

[29] Dr. Fritz, the first SAMC, limited Plaintiff to light work, and specified that he could occasionally lift 20 pounds and frequently 10 pounds; stand and/or walk 6 hours in an 8-hour workday; occasionally climb ramps/stairs but never climb ladders; occasionally balance, stoop, kneel, crouch, and crawl. R. 110–14 (1/6/15). Additionally, Dr. Fritz opined that Plaintiff had postural limitations, but no manipulative limitations, visual limitations, communicative limitation, nor environmental limitations. *Id.* Dr. Ligon, the second SAMC, also limited Plaintiff to light work with identical limitations as Dr. Fritz. R. 120–25 (3/2/15).

[30] ALJ Matthews found that the SAMCs' determination that Plaintiff was limited to light work was inconsistent with the record including Plaintiff's daily activities, limited treatment history, and no pain medication. Thus, she accorded little weight to their opinions. R. 21. Similarly, ALJ Matthews also accorded no weight to the opinion of Dr. Zaw because his conclusion that Plaintiff was limited to sedentary work is inconsistent with his physical examination findings and Plaintiff's ability to work and perform other significant daily activities. R. 21. However, an ALJ may not count lack of treatment or failure to use medication against a plaintiff when unable to afford it; instead, the ALJ must evaluate whether the inability to afford medical care explains it. *Porter v. Colvin*, No. 12-00768-BAJ-RLB, 2014 LEXIS 44781, *19 (M.D. La. March 31, 2014) (citing SSR 96-7 and collecting cases). Plaintiff's uncontroverted testimony was that he had no insurance and was unable to afford medication, R.85–87, but the ALJ did not assess whether his inability to pay played a role in the lack of treatment or any failure to take medication. Thus, the ALJ improperly held this against Plaintiff. Moreover, Plaintiff's testimony about the use of pain medication did not relate to the time in question but was about his usage at the time of the 2016 hearing. R. 71–72.

The role of an ALJ is to "properly interpret[] the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Furthermore, "[a]n ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). But when determining a claimant's RFC, the ALJ is not permitted to "draw [her] own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong.").

Here, ALJ Matthews relied heavily on the fact that Plaintiff returned to work until September 2015,[31] his medical treatment was minimal,[32] he did not require much pain management,[33] and the findings of the first hearing that he continued to jog, do weight resistance training, and engage in karate class on Sunday.[34] As the Fifth Circuit observed in *Frank*, citing Judge Posner's warning in 1990, "although common sense might dictate that a person who could play handball [or exercise] can

---

Thus, the record does not support her finding that Plaintiff was not taking medication between 2013 and 2015.

[31] This finding is contrary to his testimony and earnings history. *See infra* n. 39.

[32] *See supra* n. 30, the ALJ may not hold minimal treatment against a plaintiff who cannot afford treatment.

[33] *See supra* n. 30, the ALJ may not hold lack of medication against a plaintiff who cannot afford it.

[34] *See infra* fn. 35 summarizing Plaintiff's testimony regarding his ability to exercise, concluding with testimony that he had not exercised for eight months before the 2016 hearing.

hold down a job, common sense about medical matters is often wrong." *Id.* (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ may not, as ALJ Matthews did here, rely on her unsupported opinion as to the limitations Plaintiff's medical conditions present and reject every medical opinion of record. *Id.; Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases) ("[W]hen the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.").

ALJ Matthews's RFC lacks substantial evidence. *Williams v. Astrue*, 355 F. App'x 828. 832 (5th Cir 2009) (finding substantial evidence does not support the RFC when the ALJ rejects the medical opinions of record); *Garcia*, 2018 WL 1513688, at *6 (ALJ's decision rejecting all medical opinions and substituting his own judgment is not supported by substantial evidence). No medical opinion on record supports the finding that Plaintiff was capable of medium work from July 15, 2013, through November 14, 2015. Accordingly, ALJ Matthews rejected every medical opinion on record and instead relied upon her lay opinion based on Plaintiff's testimony and his daily activities to conclude that Plaintiff could perform medium work. R. 18–21. This is particular troublesome when the Commissioner order a consultative examination, implying that the record required the expert analysis for the ALJ to reach an informed determination.

Defendant contends that ALJ Matthews properly afforded little weight to the medical opinions because she considered them in totality with Plaintiff's testimony. ECF No. 15 at 8–10.[35] But Plaintiff's testimony cannot overrule consistent medical opinions to the contrary. "While it is appropriate to consider the [plaintiff's] daily activities in deciding the [plaintiff's] disability status, that consideration is not dispositive." *Guzman v. Saul,* No. 1:20-cv-94, 2021 WL 3223092, at *24–25 (S.D. Tex. Jun. 29, 2021) (the ALJ may not afford little weight to every medical opinion because the plaintiff's testimony and daily activities indicated that his mental limitations were not severe, despite every medical opinion to the contrary).[36] "Although some determinations, such as disability and RFC, are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources." *Giles v. Astrue*, 433 F. App'x 241, 247 (5th Cir. 2011). ALJ Matthews erred when she rejected all opinions

---

[35] Plaintiff wrote a paper about using exercise and diet to control his diabetes in May 2013, R. 91, but testified that things had changed since then. R. 38, 78–81. In his 2014 function report, Plaintiff stated that he walks and/or jogs three times a week. R. 348 (9/22/14). Additionally, at the 2016 hearing, Plaintiff testified that he alternated between cardio and weight resistance exercise on Monday, Wednesday, and Friday as well as a karate work out on Sunday. R. 92 (5/18/16). He testified that, if he did karate on Sunday, he would not jog on Monday. *Id.* However, he also testified that his ability to do his exercise routine had decreased since turning 60. R. 90 (5/18/16). He testified that when doing karate for exercise, he was operating at half speed. R. 63. At the 2016 hearing, Plaintiff testified that he had not exercised in eight months but was maintaining his weight and trying to control his diabetes with herbs. R. 80–83.

[36] Under Fifth Circuit precedent, when every medical professional agrees that an impairment is severe, it is error for the ALJ to find that the impairment is non-severe. *Id.* (citing *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018)). Similarly, here all the medical opinions find Plaintiff's impairments limit him to either sedentary or light work, thus it is error to find he can perform medium work.

of record limiting Plaintiff to light or sedentary work and concluded that Plaintiff could perform medium work. Accordingly, ALJ Matthews' decision is not supported by substantial evidence. *Williams*, 355 F. App'x at 832.[37]

Defendant argues that the ALJ's determination that Plaintiff could perform work at the medium level was supported because Plaintiff in fact continued to work as an electrician during the relevant time frame. ECF No. 15 at 8–10. Defendant misstates the record.

Plaintiff testified at the hearing that he was actively seeking employment as an electrician until January 2014, and then briefly in 2015 worked as an instructor at Houston Community College. R. 51–59, 99. Detailed earnings records establish, however, that Plaintiff earned $6,736 for 2013, and had no earnings in 2014, which does not constitute "substantial gainful activity." R. 296–99.[38] As ALJ Matthews found, during the relevant time-period, Plaintiff had substantial gainful activity only in the first quarter of 2015, based on the income generated from his teaching job. R. 18.

---

[37] Because the Court finds no substantial evidence to support the ALJ's determination that Plaintiff could perform medium work, it need not address the other issue Plaintiff raises that the ALJ did not account for all of his impairment in the RFC. *See, e.g.*, *McNickles v. Thaler*, No. H-10-3493, 2012 WL 568069, at *5 (S.D. Tex. Feb. 21, 2012) (declining to address alternative summary judgment ground because respondent was already entitled to summary judgment).

[38] "Substantial gainful activity" is defined as $1,040 a month for 2013, $1070 a month for 2014, and $1,090 for 2015. SOCIAL SECURITY. *Substantial Gainful Activity*, http://ssa.gov/oact/cola/sga.html, last visited 9/30/21.

As his condition worsened, Plaintiff testified that he had to decrease the number of hours he worked, causing his wife to increase her teaching from part-time to full-time in 2013. R. 42; 53. Plaintiff's steady decline in his ability to work correlates with his earnings report[39] and corresponds with Dr. Harris's note that Plaintiff's work as an electrician will continue to aggravate his injury. R. 430–32. Furthermore, even though Plaintiff held himself out as seeking work in 2013 and 2014, he testified that was looking for work that could be performed one to two days a week and for less than four hours a day. R. 38, 52. He specified that he could not maintain full-time work since 2013, because he could not work every day. R. 38, 100-02.

Finally, the only substantial work Plaintiff was able to perform during the relevant period was as an instructor at Houston Community College. R. 18. Plaintiff was fired from this position after seven weeks because he was unable to prepare the lab for the "hands-on" electrical portion of the class. R. 101–02.

The record does not support the ALJ's determination that Plaintiff could return to his past work as an electrician at the medium work level. For these reasons, ALJ Matthews decision is not supported by substantial evidence.

---

[39] Plaintiff's Detailed Earnings indicate that Plaintiff earned the following: (R. 296–309)

| | | | |
|---|---|---|---|
| 1995: $25,564 | 2001: $57,843 | 2007: $15,121 | 2013: $6,736 |
| 1996: $18,703 | 2002: $84,900 | 2008: $27,047 | 2014: None |
| 1997: $43,714 | 2003: None | 2009: $15,312 | 2015: None |
| 1998: $60,696 | 2004: $15,862 | 2010: $12,150 | 2016: None |
| 1999: $72,600 | 2005: None | 2011: $20,203 | 2017: None |
| 2000: $27,440 | 2006: $15,410 | 2012: $23,541 | |

### B. PLAINTIFF WAS PREJUDICED.

A court will not vacate a judgment unless the "substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Therefore, Plaintiff must demonstrate that he was prejudiced from the ALJ's errors. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."). In social security cases, a plaintiff establishes prejudice by showing that, absent the error, the Commissioner might have reached a different conclusion. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

ALJ Matthews concluded that Plaintiff was not disabled at step four because he could perform medium work, and therefore return to his past work as an electrician. R. 18–22. Plaintiff proffers that this error was prejudicial because had ALJ Matthews limited him to light or sedentary work—as every medical opinion on record had done—then he would have "grid out" under Medical Vocational Rule 202.06 and would have been found to be disabled. ECF No. 15 at 8–9.

The vocational expert testified at the first hearing that Plaintiff's past work as an electrician was a medium level occupation with no transferrable skills to other work at the sedentary or light level. R. 103. Because Plaintiff has a high school

degree and was of advanced age during the relevant time-period,[40] Medical-Vocational Guidelines, Rule 202.06[41] directs a finding of disabled. Accordingly, absent ALJ Matthews's error, the guidelines would have directed ALJ Matthews to find Plaintiff disabled beginning on July 15, 2013. Therefore, Plaintiff has successfully demonstrated prejudice in this case.

## V.    RELIEF: THE COMMISSIONER IS DIRECTED TO AWARD PLAINTIFF BENEFITS

Plaintiff asks this Court to return this case to the Commissioner with instructions to pay Plaintiff Title II benefits from July 15, 2013,[42] through November 14, 2015, or in the alternative remand for a new hearing. ECF No. 16-1 at 3.

Plaintiff's application has been pending since 2014, he has had two hearings, two appeals, and two decisions from two different ALJs. The Commissioner has already awarded Plaintiff benefits beginning on November 15, 2015. Because substantial evidence does not support a finding of medium work, the only opinion evidence in the record is that Plaintiff is limited to light or sedentary work for the period of July 2013 through November 14, 2015, and Plaintiff "grids out" at light

---

[40] Plaintiff was born on August 19, 1952, and was 60 years old on July 15, 2013, the onset date. R. 106.

[41] Medical-Vocational Guideline Rule 202.06 directs that if a Plaintiff is of advanced age (over the age of 55), limited to light work, is a high school graduate, and his previous work experience is skilled or semiskilled with skills not transferrable then he is disabled. 20 C.F.R. § 404(P) App. 2.

[42] Plaintiff mistakenly claims in his Motion for Summary Judgment and in his Response that his onset date was July 13, 2013. ECF Nos. 15, 16. However, Plaintiff's application reflects an onset date of July 15, 2013. R. 106, 294–95.

work according to the Medical-Vocational Guidelines, Rule 202.06, remand would not be appropriate because the case cannot be further developed given the passage of time since the onset date in July 2013. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (benefits are properly awarded when the record is fully developed and further administrative proceedings would serve no useful purpose, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand). Because the only medical opinions were that Plaintiff could not work at more than the light level, this Court finds it appropriate to reverse ALJ Matthews's decision and return this case to the Commissioner with instructions to pay Plaintiff Title II benefits from his onset date.[43]

## VI.    CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, ECF No. 14, and **DENIES** Defendant's motion for summary judgment, ECF No. 15. Commissioner's determination that Plaintiff is not disabled from July 15, 2013,

---

[43] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment…reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  A court may also issue a final judgment that a claimant is "entitled to any payment or payments under this subchapter." *Id*. § 405(i). *See Garrison*, 759 F.3d at 1023 (finding the district court erred by remanding for a new hearing when nothing further in the record needed to be developed and giving instructions to remand for the calculation and award of benefits).

through November 14, 2015, is **VACATED**. The Court instructs Commissioner to pay Plaintiff Title II benefits from July 15, 2013, through November 14, 2015.

    Signed at Houston, Texas, on September 30, 2021.

 

                _____

                    **Dena Hanovice Palermo**
                  **United States Magistrate Judge**